Good afternoon, everybody. Thank you for allowing us to do this remotely and moving it. I also wanted to advance and indicate that I am in my office at my apartment, which happens to be in the middle of three hospitals in Seattle. So it's crazy, but I can't do anything about that, except move. So I may hear, we may hear ambulances, which we just, I just heard it through you. So good afternoon, please the court. I'm John Henry Brown. I represent Taylor Matson, referred to generally as TJ, who was convicted of attempted enticement of a minor in violation of 18 U.S.C. 2422B. It was deriving from what we now know, and was recently highlighted by the New York Times as a government sting operation. The record in this case clearly indicates that the government created this crime. Detective Gill broached the subject of sexual activity with minors, and then aggressively sought to persuade, induce, entice, and coerce Mr. Matson into agreeing to such activity. That was what the government did. Mr. Matson resisted proposing that the two adults meet for and looking for a long-term relationship, and that he had, quote, no expectation of anything. Detective Gill responded at some point, this is a quote, at some point, sorry, at some point, something got to give to move forward. This quote isn't, sorry for my language, should I use it? Or this isn't an F-ing role play. This is the detective. You'll notice by reading the whole transcript, Mr. Matson never used any foul language. But the detective said this isn't an F-ing role play. This isn't to hang out with Netflix with my daughter. That's a direct quote. And, quote, now you're acting like you want to come and cuddle with her. Mr. Matson, my client, never told Detective Gill what his fetishes were, although she asked many times, and appeared to be, in her words, fresh, end quote, which meant that he lacked experience with sexual activity with children. Which, by the way, Mr. Matson has absolutely no record. He's a honorary discharged veteran who was deployed to Iraq. There was no pornography of any kind found on his phone or his computers. Mr. Matson disagreed with Gill when she suggested he was sexually interested in children, telling her the conversation was about your, in caps, interest in kids. Oh, here comes the siren. Rather than his. Gill repeatedly asked Matson what he wanted Carly, that's the fictitious girl, to wear. Mr. Matson never responded. Mr. Matson, in my opinion, did not commit a crime. The government did commit a crime. Back when I was in law school, before you were all born, probably, and I taught, actually, for a while, you remember that mistake of fact used to be a defense. Mistake of law was never a defense. Well, the legislatures have changed that and just eliminated the mistake of fact, which I think is actually a constitutional issue, but I didn't raise that here. Because you can't have sex with a fictitious minor. In any event, the law is clear that mistake of fact is not a defense any longer. It is the government's burden. One of my arguments is the insufficiency of the evidence to establish an attempt, which of course is a crime on its own, a substantial step by Mr. Matson to persuade, induce, somebody want to say something? Oh, okay. Mr. Matson to persuade, induce, entice, or coerce a minor into sexual activity to an adult intermediary or otherwise. There was no evidence supporting that whatsoever. There was insufficient evidence of persuasion. Counsel, I think you've overstated the record here. As they get much closer to the meeting in the restaurant and then to the day when he's planning on meeting Carly, and he has the condoms and he's made his phone calls to his doctor to get the STD report to satisfy her. They've had a very, very explicit conversation about his sexual prowess and about his anatomy. He's been very descriptive about his own sexual anatomy and whether it would hurt Carly or not. That just seems to go contrary to the way that you characterize this record. The way that you characterize this, I think might be accurate early on, but as we get closer and closer to that meeting, I think you've lost that ground. So how do you reconcile your argument with that evidence? Well, first of all, you're referring, as I believe you are, correct me if I'm wrong, to the unrecorded meeting between Mr. Mattson and the undercover agent. I've got the transcript. I've got a transcript. A transcript of the trial? No, this is the transcript of the text exchanges. Okay. Well, first of all, my response to that is that he was always responding to her questions, so she was leading him down the path. Yeah, but he knew exactly what he was going to be doing and with whom, and it was not with the mother. It was with the daughter. Well, I disagree, respectfully, Your Honor, that that's what the record supports. As a matter of fact, Mr. Mattson, he didn't. It's the critical part of this enticing, coercing, inducement, persuasion. He didn't do any of that. There's nothing in the record that indicates he did any of that, and that's the requirement for the statute. It was actually Detective Gill who was seeking to persuade Mattson to consider sexual activity with children, and this is unusual because a lot of these cases, they call them nanny's cases, basically, and almost all of them that I know of involve the undercover officer suggesting that somebody bring money, and indeed, that was not the case here, and it was never discussed. Mr. Mattson did indicate in his interview with the police and in court that he carries condoms with him all the time. This case is a- We have to look at the- Ms. Brown, we have to look at the- where we are now. We've had a jury trial, so the jury's listened to all this evidence, and as Judge Beide says, it proceeds along a continuum, which at first seems fairly innocuous until we start getting into measurements and locations and who's going to be able to direct what, and the use of the hands versus something else, so I'm hard-pressed on a sufficiency of the evidence as to why a reasonable jury couldn't conclude that he intended to have sex when we're looking at it from that lens as opposed to just trying to take one email here and one email there, so how do you get over the sufficiency barrier? Well, I think as a matter of law, this case should have been dismissed by Judge Wobar because of fighting and trapping, but it's not a matter of law. The government has the burden, and also there was a lot of opinion evidence offered by Detective Gill over my objection, not only my oral objection, but my written objections, which your court has held is improper under many circumstances. I'm not sure exactly how the government will wait to hear. I'm sure the council will make an argument. I'm not sure- That doesn't really answer my question because we have different aspects here. Of course, we have the entrapment, which you've gone down that path, but assume there isn't entrapment, you still have to get over the sufficiency of the evidence argument on appeal, and that was really where my question was directed. Correct, and in my brief, I address in detail the sufficiency of the evidence argument and that it should not have gone to the jury, basically, is what I'm saying. I'm not sure how this case can be distinguished by your case in Pullman. In Pullman, there was actually, you know that P-O-E-H-L-M-A-N, cited in my brief. Pullman is almost indistinguishable from this case, and in that case, the court said there's abundant evidence of the defendant seeking to transform or overcome the will of the minor through the government agent, and no evidence of the government agent seeking to transform or overcome the will of the defendant to make him agree to sexual activity, and that, I think, addresses the sufficiency of the evidence that you mentioned, Judge. I think you're now back into entrapment. As I recall, Pullman, and whether it's distinguishable, it seems distinguishable because there was no clearly suggestion of anything to do with the so it didn't, their question was this inducement, and then it just seems to me that the facts of how Pullman arrived at the court versus here are quite different, and if I hear you, you're saying, no, if you look at Pullman, that would be a ground for reversal. Is that your position? Yes. In Pullman, this court, your court stated that convictions cannot be sustained when the government coerced the defendant rather than the vice versa, and I believe that the record of this case clearly indicates that that's what happened, so I don't know. What's your best evidence of government coercion? The continual contact by the undercover agent, her language, her saying things like she was sexually abused as a child and really enjoyed it. I'm very disturbed about that, and I intend to ask the government about that, but how is that coercion? Where's the coercion? Well, you know, I actually used Webster's definition of coercion in the trial. It's repetitive. Remember the comment that she made that you're not really interested in this. You're not going to just come over and watch Netflix with my daughter. It sounds like all you want to do is cuddle with her, so that's coercion, because he clearly indicated, and I believe was the case, that he was interested in having a relationship with her, and he clearly ended up with the mom, the dictator's mom, which I think he indicated many times. Counsel, I have a hard time with the entrapment argument based on the fact that the communications start, the nature of these communications and what we're talking about is clear. They go silent for a month, and then it's your client that initiates, re-initiates communications. How is that entrapment coercion by the government when the government, the undercover agent, let things go silent for an extended period, and then it was your client that wanted to pick things back up again and get going? Well, that's an interesting question, because the undercover agent tests in her reports and also testified that it was the holidays and she wasn't working, so he basically said, well, have a good Christmas to June. I think I only have 223 left, is that correct? Yes. Oh, I reserved that? That's fine. I'm happy to answer any questions. It's nice to see you. All right, we'll hear from the government. Good afternoon, and may it please the court. Tanya Culbertson on behalf of the government. Mr. Mattson is arguing his view of the evidence to this court. He also argued his view of the evidence to the jury, and they rejected it. On this record, any rational trier of fact could conclude that Mattson intended to and took a substantial step, in fact, multiple substantial steps toward persuading and enticing Carly to have sex with him. He was persistent, and as you noted, Judge Forrest, he was so persistent and so patient that he reinitiated after a month of silence from the detective. In terms of argument by my opposing counsel that there is just simply no evidence of any persuasion or inducement or enticement, I think that is belied by the record. Everything that Mattson said and did was, yes, it was directed through adult intermediary, and this court has adopted that theory in McApagal, and every other circuit to have addressed that has also adopted it. So, to be sure, it is through an adult intermediary, but everything that he said and did was directed towards delivering the ultimate message to the child that my mother thinks this man is a good sexual partner for me, and that is a very powerful way to affect the mind of a child. That is a way to persuade and induce a child. I think the second circuit in the Douglas case put it very well. It said, the essence of the crime is attempting to obtain the minor's assent, which could be done, by example, by persuading a minor's adult guardian to lead a child to participate in sexual activity. That is exactly what Mattson was trying to make happen here. I can certainly go through the substantial steps themselves and whether they are sufficient. If the court has any questions about them, but as we said, I'll tell you what the more this goes on, the worse it gets for Mattson, in my view, as you can tell from my questions to Mr. Brown. But the front end of this, yeah, it's Mattson who responds quickly to Detective Gill's posting, but it seems that he's curious. Now, I don't think that the police, I don't think that Detective Gill has to run a child abuse hotline, sort of an emergency, we'll talk you out of this kind of a thing. But she is very, very persuasive up front about her own made up experiences with her father, about the experiences of her daughter with their father, and how much they enjoyed it, and how much she enjoyed it as a child. This all seems a very strong effort by the government to say, it's okay, it's okay, you can do this, and there's no harm, because look at me, I enjoyed this as a child, my kids will enjoy it, that's why I'm raising them this way. I mean, I have to say, this is pretty disturbing. I understand what your honor is saying, I understand it is certainly disturbing subject matter. And I would just point to the places in the record where after sort of making it clear, putting this on the table, letting Matson know exactly what is on offer here, so that there can be no confusion, she also steps back, she lets the conversation lapse, she does not immediately respond to his requests to meet up so that they can establish trust and get to know each other better, and so that that can ultimately lead to sexual contact with Carly. So, we also have her testimony at trial that, you know, she wanted to be very frank about what this was about, because she did not want there to be any confusion, she wanted to make it very clear to Matson, and so that's what, you know, distinguishes this from Pullman, if we want to talk about the entrapment situation, where, you know, that service member reaches out and says, you know, I'm looking for marriage, I'm looking for a family, and then the undercover agent responds, well, I want you to teach my children, and he is obviously confused by that, and says, you know, I would happily teach them morals, and then, you know, there's a six-month-long exchange, you know, at the end of which she sort of brings him around to teaching her children what she wants him to teach her children, but there is no confusion. Going back to Pullman, though, I mean, there was some important language in that case about the agent's, as they say, very subtle government pressure, and it seems to me that that could be inferred here, because she's quite skillful, I mean, she knows what she's doing, and her ultimate objective, of course, is to have him act on all of the potential prompts that she's putting on the table, and it's not like he jumps at it at first, and then there's this long hiatus, it's like she keeps at it, and that is troublesome, and it's, I mean, at a certain point, when he quit for a long time, she could have just quit, but no, she feels that she can get him on board, and that does have a sense of entrapment to it, so I am having some trouble getting over all the elements of entrapment. So, I would point to the parts of the record where, you know, when Mattson re-engages with her after the one-month hiatus, he says, are you still interested in meeting with me, and she says, look, I just sort of don't know what you're into. At some point, something's got to give. She is not, you know, sort of putting words in his mouth at that point. She is saying, tell me that this is what you are looking to move forward with, and to be sure, he is a little bit ambiguous in his statements, and he's a little cagey, but he ultimately says at page, I think, 2 ER 204, I would like to participate in lifestyle events and fetishes, and so I just note that to push back on opposing counsel's statement that he never says anything. I think it's in response to her use of the term, you know, lifestyle and fetishes, and it's not at all clear what she means by that, and it's even less clear what he means by that. I mean, this is a very, very high level of abstraction, and maybe he's just, maybe this is like calling a 1-900 number and just, you know, having phone sex. It's a virtual experience, but not an actual experience. It's just not at all clear what he wants. I mean, again, he took the initiative, he responded to the ad, and the ad doesn't look innocent. I think, as your honor pointed out, you know, as this interchange moved forward, it becomes more and more clear, and there's also the meeting at the brewery, which I don't want to discount, where there he tells her this, well, he says online, this is something I've been curious about, I played with my sister, and then when they meet at the brewery, he says, I've thought about going to Thailand, but I'm scared of being caught. He says he likes small women, he says, and then he ultimately says, your daughter, Carly, your 12-year-old daughter will meet my sexual wants. So, I think Mr. Mattson makes it very clear before, you know, the point that he goes to the hotel, what it is that he is looking for, and we also have, you know, her upfront communications about what she is offering here, while they may be crude, made it very clear at the start of the conversation that we are talking about child sexual abuse here. She discusses what her father did to her, and she discusses what, you know, her late husband did to her daughters. And so, I don't think we have any ambiguity, despite, you know, the ambiguous, cagey language at this point in the conversation about what we're talking about when we're talking about lifestyle events and fetishes. And just, you know, to further just push back or distinguish Pullman, you know, Pullman does have language that Judge McEwen pointed to, but I just think the level of inducement here, there is nothing on offer beyond sex with Carly. Romy makes very clear several times, this is not, I'm not going to engage in this, I'm not looking for friends, I'm not looking to hang for coffee. He is saying that in the context of trying to convince Romy to come to this meeting at the brewery so they can establish trust, when Romy is starting to, you know, express her hesitation and say, you're trying to get me to break my rules, you're trying to get me to send you a photo. And it's then that he says, look, look, look, I just want to meet to get to know you. How is this ever going to move forward if we don't establish this trust? And so, I think pointing to that language out of context, as Mr. Brown has done in his argument here, is not a fair reading of the record, and it is certainly not the reading of the record that this court has to engage in on sufficiency review. I know there are other issues in the brief that we haven't necessarily touched on, the evidentiary errors that are alleged or outrageous government conduct or supervisory powers. I am happy to answer any questions the panel has on those issues. Okay, if the panel has no further questions, then we would ask you to affirm. All right, thank you, counsel. Mr. Brown, I think you have a couple of minutes left. 2 to 11, I think. Thank you, counsel. We haven't talked at all about one of the, I think, critical issues in this case also is the opinion evidence issue. For instance, in the posting that Detective Gill posted, she talked about lifestyle, somebody who's into her lifestyle, and she says, I have three, I think, horses, two broken, one not broken, or the reverse, something like that. At trial, she testified that that meant she had children that one was broken in and the other wasn't. She then explains and gives her opinion over my objections all over the place, because Mr. Mattson actually raised horses. That's what he did after he got out of the service, very successfully, by the way. When I first read that under discovery, I went, think it meant children, and so the judge allowed her to say that. I think that's clearly, all of her opinions about what she thought Mr. Mattson meant should not have been allowed. Going to the counsel's argument, I think the record clearly indicates that Mr. Mattson was interested in having a relationship with a mom. He says that over and over again. He met, I've never seen a case before where they actually meet. They meet and it's not recorded, which it could have been. We then go to her- I agree with you. That is unusual in this case, that the adult and the defendant actually meet. Actually, there's a text after they met at the Pyramid Ale House. He sends a text and he says, wow, you're really pretty. I like you. Doesn't talk about the girls. Talks about her. Let me see my notes here. I think all he said was, and I think with a great deal of embarrassment, he said that when he was younger, he kissed his sister. I don't believe he said he did anything more than that. I find these cases, personally, troubling. There's enough crime out there that we don't have to uncreate it. There were nine police officers involved in this case who could have been doing something else. Mr. Mattson is an extraordinarily great person, actually. He fell into the trap. The government has the burden of disproving entrapment. I think the trial judge should have because they didn't meet their burden. Also, we haven't talked about- You're over time. We haven't discussed at all about predisposition, which is a government's burden also. Sorry. Unless my colleagues have questions, then we need to conclude this argument. Thank you very much for your time, everybody. Bye. Thank you very much. The matter of United States versus Mattson will be submitted.
judges: McKEOWN, BYBEE, FORREST